**Clyde DELAUGHTER, d/b/a Bogalusa Dairy Products,**

v.

**The BORDEN COMPANY.**
**Civ. A. No. 11049.**

United States District Court
E. D. Louisiana,
at New Orleans.

Dec. 16, 1964.

Richard F. Knight, John W. Anthony, and Charles M. Hughes, Talley, Anthony, Hughes & Knight, Bogalusa, La., for plaintiff.

T. C. W. Ellis, Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, La., for Ingard Johannesen, trustee.

Walter M. Barnett, Montgomery, Barnett, Brown & Read, New Orleans, La., Joseph A. Greaves, The Borden Co., Chicago, Ill., Stuart S. Ball, George W. McBurney, Sidley, Austin, Burgess & Smith, Chicago, Ill., Richard J. Flynn, Washington, D. C., for defendant.

FRANK B. ELLIS, District Judge.

Clyde Delaughter, doing business as Bogalusa Dairy Products, instituted this action on March 25, 1961, in the Twenty-second Judicial District Court, Washington Parish, Louisiana, and defendant removed it here on the basis of diverse citizenship. The petition alleges that The Borden Company violated the Louisiana Orderly Milk Marketing Act[1] by accruing and paying discounts and rebates in

---

1. Act No. 193, § 1 of 1958, as amended, LSA–R.S. 40:940.1–40:940.23.

favor of certain non-processing dairy product retailers from sometime prior to February 1, 1960 until February 9, 1961.[2] Plaintiff seeks treble damages for actual losses thereby caused to his dairy products processing business.[3]

Borden now moves to dismiss the complaint under Rule 56,[4] on grounds that the relevant provisions of the Act are unconstitutional as violative of Section 1 of the Fourteenth Amendment to the United States Constitution, and of Section 2 of Article I of the Louisiana Constitution, LSA, and in addition, that plaintiff's cause of action has prescribed under the one-year provision of LSA–Civil Code Article 3536.[5]

■ While there is no law specifically applying the one-year period of limitations to the Milk Marketing Act, in Loew's, Inc. v. Don George, Inc.,[6] the Louisiana Supreme Court applied the provision to a private anti-monopoly action on the theory that a violation of that act created a tort action for "injury to business".

"(T)he Louisiana Civil Code term, 'offenses and quasi offenses,' is, not a specific and exclusive, but a general term which embraces all 'tort' actions, including the action for 'injury to business.'" 110 So.2d at 558. Delta Theaters, Inc. v. Paramount Pictures, Inc., 158 F.Supp. 644, 646 (E.D.La.1958), appeal dismissed, 259 F.2d 563 (5 Cir. 1958). See Diliberto v. Continental Oil Co., 215 F.Supp. 863 (E.D.La.1963).

Plaintiff's cause of action here, as noted above, asserts that Borden's accrual and payment of discounts and rebates in violation of the Act caused many Bogalusa Dairy Products Co. customers to transfer allegiance to Borden, thus resulting in injury to plaintiff's business for which treble damages are now sought. Being an action under the Milk Marketing Act for "injury to business", by analogy, the same one-year prescriptive period must be applied as when an action is brought under the Louisiana Anti-Trust law for "injury to business".[7]

■ Some discounts were paid more than a year prior to the filing of suit, while others were paid within the year. Here plaintiff forcefully urges that the damage allegedly suffered "culminated from the combined effect of all of defendant's acts and resulted in the elimination of plaintiff from business and competition with defendant—*a single wrong constituting a single cause of action.*" (Emphasis added). This Court agrees with plaintiff that under the facts alleged herein, "the suit is for the damages resulting from a single continuous wrong and from the cumulative effect of a contemplated series of acts designed to accomplish a common purpose and object," and thereby created a single wrong resulting in a single cause of action. Winkler-Koch Engineering Co. v. Universal Oil Products Co., 100 F.Supp. 15, 29 (S.D.N.Y.1951). In that respect the tort of "injury to business" in this particular case is distinguishable from a trespass action wherein each individual

---

2. On February 9, 1961, Borden was temporarily restrained from such activity by order of the Louisiana 19th Judicial District Court.

3. Act No. 193, § 1 of 1958, as amended, LSA–R.S. 40:940.15.

4. Federal Rules of Civil Procedure, 28 U.S.C.A.

5. The applicable portion of Article 3536 provides:
    "The following actions are also prescribed by one year:
    "That for * * * damages * * * resulting from offenses or quasi offenses. * * * "

6. 237 La. 132, 110 So.2d 553 (1959). Plaintiff there had sued for damages from breach of contract. By way of reconventional demand defendant sought treble damages for alleged violations of the Louisiana Anti-Trust law, LSA–R.S. 51:121 et seq.

7. LSA–C.C. Article 17 states:
    "Laws *in pari materia*, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another."

act of trespass constitutes a separate wrong. Having reached this conclusion, it is then necessary to determine "when" prescription began to run against this cause of action.

Substantial authority indicates that prescription under Article 3536 begins to run from the time plaintiff acquired sufficient knowledge of the offense to realize that he was sustaining damages. LSA–C.C. art. 3537; R. J. Reynolds Tobacco Co. v. Hudson, 314 F. 2d 776 (5 Cir. 1963); Maxfield v. Gulf States Utilities Co., La.App., 65 So.2d 615 (1 Cir. 1953); Reymond v. Sumrall, La.App., 67 So.2d 925 (1 Cir. 1953). Elton Delaughter, plaintiff's son and former assistant manager of Bogalusa Dairy Products, testified in a deposition on April 9, 1964 that he first knew of Borden's allegedly injurious activities in February of 1960, and had even heard rumors to the same effect earlier than that.

"Q. When did you first become aware of that [the discount]?

"A. In 1960, February, when the discount was paid off.

"Q. And that was the first knowledge that you had that they offered discounts?

"A. No, it wasn't the first knowledge I had. It had been rumored all around that that was going on.

"Q. When did you first hear rumors to that effect?

"A. Oh, I heard rumors earlier than that, but it didn't affect us too much until they paid the discounts off, then it affected us."

(Tr. p. 23)

Such knowledge of an agent is imputable to his principal.

Thus prescription began to run in February of 1960, if not sooner. Since legal action was not commenced until March 25, 1961, plaintiff's cause of action is barred by the one-year provision of Article 3536, and defendant's motion to dismiss must be granted. Having so disposed of this case it is unnecessary to consider defendant's alternative ground for dismissal relating to the constitutionality of the Act.