Acting under a writ of fieri facias in the suit of the United Auto Supply Company, Incorporated, v. Joel B. Dickinson, the sheriff of West Carroll Parish seized all of the goods, wares, merchandise and fixtures of the said defendant in a filling station, garage and repair shop operated by him in the Town of Oak Grove, in said parish. At the time of said seizure the sheriff also (erroneously) seized an air compressor and motor located inside of the station building, which belonged to the plaintiff, Magnolia Petroleum Company. All of the seized property, including the motor and compressor, was advertised for sale and when offered for sale by the sheriff was purchased by the defendant, W.H. Keller, who thereafter on demand of plaintiff's agent refused to deliver the motor and compressor to him.
Plaintiff instituted this suit against Keller to recover the motor and air compressor, or, in the alternative, judgment for the value thereof, alleged to be One Hundred Sixty-Six ($166) Dollars, in the event defendant should fail to or could not restore the property to plaintiff's possession.
Defendant resists the suit on the following grounds, to-wit:
1. That said property was seized and advertised for sale as the property of Dickinson to his knowledge and that of plaintiff, and neither made opposition to the seizure and sale; that neither at any time asserted or claimed that the motor or compressor was owned by anyone other than said Dickinson; and for said reasons plaintiff is estopped because of its laches from now claiming or asserting ownership of said property.
2. In the alternative, that the act of plaintiff in entrusting the motor and compressor to said Joel B. Dickinson, its agent, for use in the operation of his business known as the "Joel B. Dickinson Motors", as though he were owner thereof, placed defendant, an innocent purchaser, "in the position of sustaining a loss through no fault of his; it being a well settled principle of our law that where one of two innocent persons must suffer a loss in consequence of the unauthorized acts of an agent, he who is the cause of the confidence, by which the loss has been occasioned, ought to bear it."
There was judgment for plaintiff as prayed for by it. The value of the motor *Page 67 
and compressor was fixed at One Hundred Twenty-Five ($125) Dollars. Defendant appealed. Answering the appeal, plaintiff prays that the value of the property be increased to One Hundred Sixty-Six ($166) Dollars.
In 1940 plaintiff acquired a lease of the lot and building in which Joel B. Dickinson conducted his business. As a concomitant of a sub-lease from plaintiff, Dickinson agreed to handle plaintiff's petroleum products and in return for this agreement and as an essential element of the sub-lease contract, plaintiff, as was its custom in such cases, agreed to and did deliver to Dickinson at the building, and install for him, the needed pumps, tanks, a hydraulic lift and the motor and compressor involved herein. All of this equipment was installed and used without the building, except the motor and compressor which were set up inside of it. This equipment was indispensable to the successful operation of a garage and filling station business. The outside equipment was not seized by the sheriff for the reason that he knew that the same was owned by plaintiff.
The record clearly establishes that neither the plaintiff nor any of its agents or representatives had knowledge of the seizure of the property in controversy prior to the time it was sold. It is true that one of the agents on the day of seizure and another thirty days thereafter learned that Dickinson's business had been closed by seizure but neither knew that the motor and compressor had been seized. Dickinson, as a matter of fact, did not know of it. He is positive that when the sheriff came to his place to execute the writ he told him that the motor and compressor were owned by the plaintiff and should not be seized. In so testifying he is corroborated by another witness. The sheriff, however, is positive that Dickinson did not disclose to him the ownership of the property. Of course, there is error on the part of one of these gentlemen. The good faith of neither can be questioned. It is quite certain that had Dickinson known that the seizure included the motor and compressor he would promptly have notified the plaintiff or one of its agents of that fact.
It is argued that the facts of the case warrant imputing knowledge of the seizure to plaintiff; that it and its agents stood by and allowed the property to be sold and for these reasons plaintiff is now estopped to assert, as against defendant, ownership of the chattels.
[1] Defendant only decided to bid on the property the morning of the sale. He did not discuss his intention to do so with any agent or representative of plaintiff prior to the sale and no representative of plaintiff was present when the sheriff's sale was made. Nothing was done by plaintiff or its agents to induce or lead defendant to believe that Dickinson owned the property other than failure to oppose the seizure prior to the sale and this inaction was a natural result of their lack of actual knowledge of the seizure of the property. Advertisement of sale in the local paper and the fact that the property was listed among the many chattels seized are not sufficient to warrant imputation of knowledge of the seizure to plaintiff. The plea of estoppel was properly overruled.
[2] The invoked doctrine that where one of two innocent persons must suffer a loss in consequence of the act of a third person, he through whose fault or inaction the loss occurred, should bear it, is not applicable to the facts established in this case. We think it can be said that neither the plaintiff nor Mr. Keller is to be criticized for what either did or did not do in connection with the matter to the time of sale. The controversy simply arose from a state of facts, the like of which occasionally happens. However, concerning this defense, the lower court in written reasons for judgment, said:
"As to the theory that where one of two innocent parties must suffer, he whose actions caused the dilemma should suffer, we think that defendant would be the one to lose in this case. The sale took place on July 11th and he had notice of the error on July 14th. If he had acted promptly by returning this article, he could have secured the return of his money either from the sheriff, or from the party provoking the sale. It is not shown when the sheriff disbursed the money, but his returns are dated August 4th, 1942, which would indicate that the proceeds of sale had not been paid out as early as July 14th."
It is not clear that defendant will suffer a loss by having to deliver up the motor and compressor to plaintiff or pay its value. He has his remedy in warranty against the judgment debtor and the seizing creditor. Code of Practice, Articles 711 and 712; Civil Code, Article 2621.
[3] The sheriff simply sold the property of one person to pay the debt of another, *Page 68 
and under the facts and Article 2452 of the Civil Code, such a sale is null.
[4, 5] The sale price of the compressor and motor when delivered to Dickinson in October, 1940, was One Hundred Sixty-Seven and 75/100 ($167.75) Dollars. When seized, it had been in use for some twenty months. Naturally, there was some depreciation in value arising from use, but the record is inconclusive as to the extent of the depreciation. Due to economic conditions, equipment of this kind is not easily obtainable. It is scarce and this caused a temporary rise in its value. The trial judge's valuation of the property at date of trial is not specifically sustained by positive testimony. He evidently was of the opinion that the property had materially deteriorated in value from use, and concluded that its value at that time was One Hundred Twenty-Five ($125) Dollars. We are not prepared to dissent from this conclusion. Be this as it may, the value of the property is a secondary question. The property itself belongs to plaintiff. Defendant testified that it was not in use at time of trial but was in his possession. We assume that he still has it and can deliver it to plaintiff. Plaintiff has the right to require delivery of the property to it. Defendant should not have the option of paying the value of the motor and compressor, as judicially determined, as against its delivery to plaintiff.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.